IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LOLA ALLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  2:04CV798-M |
| ) | [WO] |
| ALABAMA DEPARTMENT OF ) | |
| POSTSECONDARY EDUCATION; ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW AND ORDER ON MOTION**

On 2 April 2005, the defendants filed a Motion For Summary Judgment (Doc. # 22). They sought dismissal of all of the plaintiff's claims because of the absence of any genuine issue of material fact and asserted that they were entitled to judgment as a matter of law.  The defendants also filed their supporting brief (Doc. # 23) and appendix of evidence on 2 April 2005 and on 4 April 2005 (Docs. # 24, 28).

Pursuant to the court's order entered on 16 December 2004 (Doc. # 15), the plaintiff's response to the motion and her brief and responsive submission were due on 23 April 2005. The plaintiff has filed no response to the motion for summary judgment.

For the reasons which follow, the court concludes that the motion should be GRANTED.

## I.   DISCUSSION

*A.   Standard of Review*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant, either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. ***Roe v. Aware Woman Ctr. For Choice, Inc., et al.***, 357 F. 3d 1226, 1228 (11th Cir. 2004) citing ***Celotex Corp v. Catrett***, 477 U.S. 317, 322 (1986).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to her claims, the claims on which she bears the burden of proof at trial. To satisfy this burden, the nonmovant cannot rest on her pleadings. Rather, she must, by affidavit or by other means, set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). If the nonmoving party does not respond to a motion for summary judgment, the court may grant a motion for summary judgment in favor of the moving party, given the defendant's presentation is sufficient to justify the court's conclusion. ***Id***.

The court's sole function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant

is entitled to judgment as a matter of law. ***United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida***, 363 F. 3d 1099, 1101 (11th Cir. 2004). "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." ***Lofton v. Sec'y of the Dep't of Children and Family Servs.***, 358 F. 3d 804, 809 (11th Cir. 2004).

Moreover, "[t]he court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party." ***Morrison v. Amway Corp.***, 323 F. 3d 920, 924 (11th Cir. 2003). All evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. ***Nat'l Fire Ins. Co v. Fortune Constr. Co.,*** 320 F. 3d 1260, 1267 (11th Cir. 2003) citing ***Whatley v. CNA Ins. Cos.***, 189 F. 3d 1310, 1313 (11th Cir. 1999).

### B.   *The Claims and Defenses*

The plaintiff, Lola Allen ["Allen"], filed her lawsuit on 25 August 2004 and invoked this court's jurisdiction pursuant to Title 28 U.S.C. §§1331, 1343, and 2201; 42 U.S.C. §2000e, et seq. [Title VII of the Civil Rights Act of 1964], as amended]; 29 U.S.C. §206(d), and the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

Allen alleges that the defendants discriminated against her because of her race and gender.  She seeks

> "mandatory, preliminary and permanent injunctions requiring

3

> Defendants to appoint Plaintiff into the Director of Accounting position with all back pay, interest, allowances, seniority, status and retirement benefits to which she would have been entitled had she been properly employed and properly paid."

## II.  FACTS

Because Allen has filed no response to the defendants' motion, the court adopts the defendant's statement of uncontested facts for the purpose of disposing of the motion. That statement is set forth in the defendant's supporting brief (Doc. # 23) and is reproduced here.

The Alabama College System consists of 21 community colleges, five technical colleges, one senior institution, a statewide industrial training institute and other related activities. (Dahl Declaration ¶ 1) The Alabama Department of Postsecondary Education is the state agency with responsibility to the State Board of Education for the direction and supervision of the operation of the Alabama College System. (Dahl Declaration ¶ 2) The Chancellor is the chief executive officer of the Department of Postsecondary Education. (Id.)

Allen began working for the Department of Postsecondary Education ["the Department"] as a student intern in 1979. (Allen depo. p. 18, ln 3-6) She was appointed to the full-time position of Accountant on 19 September 1983 with a bi-weekly salary of $593.83. (Allen depo. p. 18, ln 7-9; Dahl Declaration ¶ 3)  Allen remained employed with the Department continuously until her resignation on 15 April 2002. (Allen depo. p. 18, ln 10-13; Dahl Declaration ¶ 3)

Throughout her employment, Allen was supervised by Debra "Debbie" Dahl, who was

employed as the Vice-Chancellor for Fiscal and Information Services for the Alabama College System at the time of Allen's resignation. (Allen depo. p. 26, ln 17-23; p. 27, ln 1-6; Dahl Declaration ¶ 3)   In 1990, Allen was promoted to the position of Coordinator of Department Fiscal Operations at a salary of $28,640.00 per year. (Allen depo. p. 45, ln 9-14; Dahl Declaration ¶ 4)

In February 1998, Allen was promoted to the position of Acting Director of Fiscal and Administrative Services with an annual salary of $54,531.00. (Allen depo. p. 47, ln 20-23; p. 48, ln 1-2; Dahl Declaration ¶ 4).  Allen became the Director of Fiscal and Administrative Services in October 1998 and was given a raise in salary to $64,305.00. (Allen depo. p. 48, ln 3-9; Dahl Declaration ¶ 4)

At the time of her resignation in April of 2002, Allen was paid $71,128.00 per year (Allen depo. p. 48, ln 18-21; Dahl Declaration ¶ 4).  H. Councill Trenholm State Technical College ["Trenholm Tech"] is a two-year public institution of higher learning operating as part of the Alabama College System. (Molina Declaration ¶ 1) Trenholm Tech operates under the supervision and direction of the Alabama State Board of Education and the Chancellor of the Alabama College System. (Id.)

Dr. Anthony Molina has been the President of Trenholm Tech since 19 November 2001. (Id.)  In June 2003, Trenholm began the selection process for the position of Director of Accounting. (Molina Declaration ¶ 3-4).  Allen was among the applicants for the position, and she was selected as one of the three finalists to interview with Dr. Molina (Molina Declaration ¶6).   In August 2003, Dr. Molina selected Andrew Jordan ["Jordan"], white

5

male, for the position of Director of Accounting (Molina Declaration ¶ 8).

However, Jordan took another position within the College System, and the search was re-opened in September 2003 (Molina Declaration ¶ 8-9). Allen applied again, and she was again selected as one of the three finalists (Molina Declaration ¶ 11). After Dr. Molina interviewed the finalists, he selected Wayne Harkins ["Harkins"], white male, for the position (Molina Declaration ¶ 12). However, when the Chancellor did not authorize placement of the position on the C-2 salary schedule, Harkins withdrew his acceptance of the offer (Molina Declaration ¶ 12). Subsequently, the position was filled on an interim basis by Mary Ann Beck, white female (Molina Declaration ¶ 14).

In October 2004, the search was re-opened, and Allen applied for the position again (Molina Declaration ¶ 15). In January 2005, the search was closed before it was completed and no candidate was selected (Molina Declaration ¶ 15). The search process for Director of Accounting has now been re-opened, and Allen has again applied for the position (Molina Declaration ¶ 15). The search process is ongoing as of this date.

## II. DISCUSSION

The fact that Allen failed to respond to the motion for summary judgment is critical in this case. However, "summary judgment cannot be granted as a sanction for merely failing to file a response to a motion for summary judgment". ***Trs. of the Cent. Pension Fund of the Intl Union of Operating Engrs & Participating Emplrs. v. Wolf Crane Serv.***, 374 F.3d 1035, 1040 (11th Cir. 2004). Thus, the court analyzes the substance of the motion.

> The initial burden of demonstrating that there is no genuine issue of material fact rests with the party requesting summary judgment. *United States v. An Article of Food,* 622 F.2d 768, 771 (5th Cir. 1980). But, when a motion for summary judgment is accompanied by affidavits or other evidence, it is incumbent upon the opposing party to produce evidence which will support the allegations made in the complaint. The opposing party cannot then rely on the pleadings alone. Fed.R.Civ.P. 56(e); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-61, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970). If the opposing party does not produce countervailing evidence, summary judgment will be granted, "if otherwise appropriate." *Sweet v. Childs*, 507 F.2d 675, 679 (5th Cir. 1975).

***McLaughlin v. La Grange***, 662 F.2d 1385, 1388 (11th Cir. 1981).

*A.  Allen's Claims*

Allen challenged two selections in her complaint, and she alleges general harassment and discrimination on the basis of her race.  Her complaint reveals three claims:

1. Harassment and discrimination by her immediate supervisor, Debbie Dahl, a white female [¶15 of the Complaint, Doc. # 1];

2. Non-selection for the position of Director of Accounting in August 2003, when Dr. Molina selected Andy Jordan, a white male [¶18]; and

3. Non-selection for the same position in October 2003, when Dr. Molina selected Wayne Harkins, a white male [¶20].

Based upon her attorney's oral representations at the pretrial conference conducted on 1 July 2005, Allen attempts to assert additional claims of race discrimination premised upon subsequent non-selections, but those events are not before the court.  First, they are not

alleged in the complaint (Doc. # 1). Second, there is no amended complaint before the court.[1] Third, because Allen failed to respond to the motion for summary judgment, there is no evidence before the court whatsoever regarding any additional claims.

Thus, the court has construed this claim, for the purposes of disposing of the motion for summary judgment, as one which includes only the three claims articulated above.

### B.     *The Defendants' Contentions*

The defendants assert two arguments in their motion:

1. Allen has failed to state a claim against the Department of Post-Secondary Education.

2. The defendants are entitled to summary judgment on Allen's hiring claims.

Because the court has resolved the motion on the basis of the second argument, it is unnecessary to address the first argument.

### C.     *The Race Discrimination Claims*

There is no direct evidence that race discrimination was the reason for Ms. Dahl's

---

[1] On 28 March 2005, Allen filed a motion for leave to amend complaint (Doc. # 21). She alleged the subsequent posting at Trenholm Tech of the position of Director of Accounting and her non-selection in that process. She specifically contended that she was rejected for the position in December 2004. On 4 April 2005, in response to Allen's motion, the court entered an order directing Allen to submit specific information, including, ***inter alia,*** information about her exhaustion of administrative remedies (Doc. # 26). Allen was directed to submit the information by 11 April 2005. When she failed to do so, the court denied the motion on 18 April 2005 (Doc. # 29).

treatment of Allen or Dr. Molina's failure to select Allen for the position of Director of Accounting at Trenholm Tech. However, a complainant is not required to provide direct proof of disparate treatment. ***United States Postal Service Board of Governors v. Aikens***, 460 U.S. 711, 714 (1983). Allen is required, however, to prove a ***prima facie*** case of discrimination. ***Texas Department of Community Affairs v. Burdine***, 450 U.S. 248, 252-253 (1981). Thus, Allen must provide sufficient evidence from which a legal inference of discrimination can be drawn; if such inference is left unexplained, it can be concluded that the adverse action complained of was more likely than not motivated by unlawful bias.

The Supreme Court set forth an analytical framework for establishing a case by inference in ***McDonnell Douglas Corp. v. Green***, 411 U.S. 792, 802 (1973). A complainant can establish a ***prima facie*** case by showing that: (1) she belongs to a protected group under Title VII; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) after her rejection, the position remained open and the employer continued to seek applications from persons of complainant's qualifications.

Once a ***prima facie*** case has been established, there is an inference that the employer acted with a discriminatory motive, and the respondent may rebut the evidence by articulating a legitimate nondiscriminatory reason for her action. ***Burdine, supra***. If the respondent succeeds in articulating a legitimate nondiscriminatory reason for her action, the complainant can prevail by demonstrating that the respondent's articulated reason was not the true reason for the challenged employment decision. She may make this showing "either

directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence". ***Burdine, supra***, at 256.

### 1.     Non-Selection

The facts of this case fit into the McDonnell-Douglas template.  Allen belongs to a protected group (African American), and it is undisputed that she applied for the position on two occasions and was rejected in favor of two white males.  The defendants do not challenge Allen's qualifications for the position.  Indeed, it is undisputed that when Jordan and Harkins were selected, Allen was "one of the three finalists to interview with Dr. Molina" (Doc. # 23, p. 3).  Moreover, the defendants concede that, for purposes of this motion, "Allen can state a prima facie case of discrimination in hiring" (Doc. # 23, p. 17). The court agrees.

In furtherance of the defendant's burden to assert a legitimate, non-discriminatory reason for the selections, the court has reviewed Dr. Molina's sworn affidavit.  He stated:

> Although I had never worked with Ms. Allen before,[2] I was acquainted with her, and I knew that she had previously been employed with the Department of Postsecondary Education. . . The selection committee . . . selected three finalists to be interviewed by me: Ms. Allen, Mr. Andrew Jordan, and Ms. Alondrea Pritchett.

---

[2] Allen acknowledged that Dr. Molina "didn't know anything about [her]".  (Allen Depo., p. 90).

>. . . . . .
>
>Ms. Allen had listed Debra Dahl, Vice Chancellor for Fiscal and Administrative Services for the Department of Postsecondary Education, as a reference. I had been working with Ms. Dahl on many of the accounting problems at Trenholm Tech, and she was very familiar with those problems and the skills and characteristics necessary to serve successfully as Director of Accounting at Trenholm Tech. Ms. Dahl was also familiar with Ms. Allen's work ethic and abilities as she had served as Ms. Allen's supervisor for many years. I called Ms. Dahl and visited with her about Ms. Allen's ability to perform in the position. Ms. Dahl informed me that she would not recommend Ms. Allen for the position. She told me that, based upon her supervision of Ms. Allen as Director of Fiscal and Administrative Services, she did not believe that Ms. Allen was capable of adequately performing the duties and responsibilities necessary for the Trenholm Tech position.[3]

(Doc. # 23, Exh. 1). Dr. Molina also attested to Jordan's "relevant work experience, demonstrated abilities and professional skills". Based on his assessment, he "decided that [Jordan] would be the best match for the job." *Id.*

When Jordan took another job, the position was announced again, and again, Allen and others applied. Allen sought an explanation from Dr. Molina for her non-selection, and during a telephone conversation, he told her that "Ms. Dahl had not recommended her for the position". He further advised Allen that, "based upon the reference, I decided that she was not the best candidate for the position". *Id.*

Dr. Molina denied that race discrimination played any role in Allen's non-selection

---

[3]Dr. Molina stated that, during his conversations with Ms. Dahl, "[a]t no time . . . . did we discuss race or gender. I valued Ms. Dahl's opinion, but it was my decision not to select Ms. Allen for the position.". (Doc 23, Exh. 1, p. 4).

11

for the job offered to Jordan.[4]

> "My decision not to offer the position to Ms. Allen had nothing to do with race or gender. It was based entirely on what I deemed to be in the best interest of our College." Doc. # 23, Exh. 1, p. 4).

After Jordan declined the position, the search was re-opened in September 2003 with new announcements. Again Allen applied, and a new selection committee was appointed, resulting in Allen's selection as one of the three finalists. According to Dr. Molina,

> I interviewed the three finalists and determined that Mr. Harkins best fit the needs of our College. Mr. Harkins accepted the position subject to the approval of the salary that I had determined would be appropriate for the position. However, when the Chancellor of Postsecondary Education would not authorize placement of the position on the C-2 salary schedule, and directed that it be on the lower C-3 salary schedule, Mr. Harkins redrew [sic] his acceptance of the offer.

*Id.* Dr. Molina repeated his declaration that "[his] decision not to appoint Ms. Allen had nothing to do with her race or gender. It was based on doing what was in the best interest of the College". *Id.*

Allen failed to present any evidence that the legitimate, non-discriminatory reason proferred by the defendants was pretextual. First, she submitted no contradictory evidence; nor did she present evidence that another reason - one based upon her race - more likely influenced Dr. Molina's decision. In her deposition, she merely stated the following:

> . . . . I told Dr. Molina I was surprised that Debbie had said

---

[4] Jordan never assumed the position. He "was offered a higher position at another two-year college during the same period of time and chose to take the other position." *Id.*

> that to him, because I had talked to her two weeks prior to that. I had an exemplary work record, nothing in my personnel file over twenty years, that I had proven myself in regard to the director in the department. She had asked me to serve in that position, that if I were to work as director in the department for a year and if I proved myself that I could do the job, she would not advertise the position, and she didn't.

(Allen Depo., p. 92).

Allen returned for a second interview, but when asked by defendant's counsel if anything was said that was "racially offensive", she responded "No". She reiterated her contention that her non-selection was based on race, but she did not attribute to Dr. Molina any such statements (Allen Depo., p. 97). As support for her race discrimination claim, Allen stated:

> Because I felt like in a system that's under a consent decree to hire black people, especially black women, I was qualified – probably the most qualified applicant. Since most of my duties at Postsecondary in the director's job was actually supervising these people that are now in the position I want to go work in, I designed all the forms, so I felt like my experience, hands-on experience, was at the top of the scale. I felt I had great – the best interview. In fact, he told me I did. And I believe that the people that were offered the job after each time I applied was white males.

(Allen Depo., pp. 97-98).

Allen acknowledged that she had not seen the applications submitted by other persons and that she wasn't present during any other interviews. Id. Allen further stated that she "just assumed that [her] experience was greater" than Harkins'. Id. A reasonable summary of Allen's position is that she believed that she was discriminated against because (1) she was

more qualified than the white males who were selected, and (2) previous lawsuits had found that Dr. Molina had discriminated against employees. She had not presented any fact to support her conclusions about Dr. Molina's motivation for rejecting her for the position.

Therefore, the court finds that Allen has failed to establish pretext, and the defendants are entitled to summary judgment on her race discrimination claims.

### 2. Harassment or Hostile Environment

Allen has also asserted a racial harassment claim. To establish a claim of racial harassment and hostile environment, Allen must show that (1) she belongs to a protected group, (2) she has been subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic of the employee, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment, and (5) the employer was responsible for such environment under either a theory of vicarious or direct liability. ***Mosley v. Meristar Mgmt. Co., LLC***, 2005 U.S. App. LEXIS 12562, 9-10 (11th Cir., 2005); ***Miller v. Kenworth of Dothan, Inc.***, 277 F.3d 1269, 1275 (11th Cir. 2002).

Isolated acts of harassment are not sufficient. The harassment must be pervasive and severe, and

> [t]he severity requirement contains both an objective and subjective element, in which we consider whether a reasonable person would find the work environment hostile or abusive, and whether the plaintiff subjectively perceived the work environment to be hostile or abusive. [*Miller v. Kenworth of*

14

>
> *Dothan, Inc.*, at 1276]. In evaluating the objective severity of the harassment, we look at the totality of the circumstances and consider, inter alia, "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance." Id. The plaintiff need not show that the harassment was so extreme that it produced tangible effects on his job performance in order to be actionable. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). Isolated or sporadic incidents of harassment do not satisfy the "severe or pervasive" standard of a hostile work environment claim. See *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 2283, 141 L. Ed. 2d 662 (1998); see also *Gupta v. Fla. Bd. Of Regents*, 212 F.3d 571, 583 (11th Cir. 2000).

***Mosley v. Meristar Mgmt. Co., LLC***, ***supra.***

Inasmuch as Debbie Dahl is not a party to this action, the court finds that the most efficient analysis of this claim should begin with a determination of whether the harassment imposed upon Allen - if any, and to whatever extent - can reasonably be attributed to any of the three parties, i.e., the Department, Trenholm Tech, or Dr. Molina. This is true because the fifth prong of the test to be applied to Allen's evidence is whether the employer was responsible for the hostile environment under either a theory of vicarious or direct liability. Thus, if Allen's evidence is insufficient to establish that responsibility, her claim cannot survive.

Dahl supervised Allen "from the time she was hired to work for the Department on a full-time basis in 1983 until she voluntarily resigned on April 15, 2002" (Doc. # 23, Exh. 2). The court has reviewed Allen's deposition thoroughly and finds no attribution to the

parties. For example, while Allen labeled Dahl as "a very controlling person" (Allen Depo., pp. 27-28), and accused her of imposing "impossible rules" (Id., p. 30), she never assigned any responsibility for Dahl's actions to the parties.

In fact, when the defendants' counsel asked Allen specifically whether she believed Dahl's rules were imposed upon her and her unit because "[her] division was predominantly black", Allen replied "I sure do" (Id., p. 20, 21).  The following exchange then occurred:

> QUESTION:	What makes you think that?
>
> ANSWER:	Well, what other reason could it be?

It is also significant that Allen did not complain about Dahl's alleged racial harassment (Allen Depo., p. 41).  Thus, no one else in the Department   - including Dahl's supervisors or others acting on behalf of the Department -   had any rule whatsoever in Allen's treatment under Dahl's supervision.

Under these circumstances, Allen has stated no claim against any of the parties in this case, and regardless of the characterization of her treatment at Dahl's hands, she has utterly failed to demonstrate that any of the named defendants played any role in those actions.

After reviewing the defendants' brief and supporting materials, the court concludes that the defendants have met their burden of demonstrating, through affirmative evidence negating essential elements of Allen's claim, the nonmovant's claim. such as the employer's responsibility for the harassment.  It goes without saying that, because Allen failed to respond to the motion, her "evidence" is insufficient to establish the essential elements of her claim of racial harassment.

### III.  CONCLUSION

Accordingly, it is ORDERED as follows:

1. The defendants' Motion For Summary Judgment is GRANTED.

2. Allen's claims of race discrimination based upon her non-selection for the position of Director of Accounting at Trenholm Tech in August 2003 and October 2003 are DISMISSED with prejudice.

3. Allen's claim of racial harassment/hostile environment against the defendants is DISMISSED with prejudice.

DONE this 5th day of July, 2005.

/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE